**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**AT LOUISVILLE**

Connie Riggs,
1601 #2 Charterwoods Circle
Fairborn, Ohio 45324
Individually and On Behalf of All Others
Similarly Situated,

                                    Plaintiff,

        vs.

HUMANA, INC.,
500 West Main Street
Louisville, Kentucky 40202

        And

Michael B. McCallister
Chief Executive Officer
Humana, Inc.
500 West Main Street
Louisville, Kentucky 40202

        And

James H. Bloem
Chief Financial Officer
Humana, Inc.,
500 West Main Street
Louisville, Kentucky 40202

and DOES 1-20

                                    Defendants.

Case No.  **3:08cv304 M**

Judge

<u>CLASS ACTION</u>

**COMPLAINT FOR VIOLATION OF THE**
**EMPLOYEE RETIREMENT INCOME**
**SECURITY ACT**

JURY DEMAND ENDORSED HEREON

*Electronically Filed*

Plaintiff Connie Riggs ("Plaintiff"), on behalf of the Humana Retirement and Savings Plan and the Humana Puerto Rico 1165(e) Retirement Plan (collectively, the "Plans") and a class of similarly situated participants ("Participants") in the Plans during the proposed Class Period (defined below), alleges as follows:

### INTRODUCTION

1.      Plaintiff brings this class action pursuant to §§ 409 and 502 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1109, 1132.  The Class Period is from September 1, 2007, through the present.

2.      Plaintiff was employed with Humana Inc. ("Humana" or the "Company") and was a participant in the Humana Retirement and Savings Plan ("Plan") during the Class Period, during which time the Plans held interests in the Company's common stock.  Plaintiff's retirement investment portfolio in the Plan during the Class Period included Humana stock. Plaintiff brings this action on behalf of all similarly situated participants in the Plans for the benefit of participants and the Plans.

3.      Defendants were "fiduciaries" of the Plans as that term is defined under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).  Defendants breached their duties to Plaintiff and to the other Participants and beneficiaries of the Plans in violation of ERISA §§ 404(a), 405, 29 U.S.C. §§ 1104(a), 1105, particularly with regard to the Company's heavy holdings of Humana stock. During the Class Period, Defendants issued materially false and misleading statements regarding the Company's business and financial results, concealed, distorted and misrepresented the Company's true financial condition, thereby precluding the Plans' participants from properly assessing the prudence of investing in Company stock, failed to prudently and loyally manage Plans' assets, failed to provide complete and accurate information to the Plans' participants,

violated ERISA's prohibition against conflicts of interest, and failed to adequately monitor other fiduciaries and to provide them with complete and accurate information.

4.      As a result of Defendants' breaches of fiduciary duty, participants of the Plans, who invested their retirement savings in Company stock, suffered acute losses.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1).

6.      Venue is proper in this District pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2) because the Plan was administered in this district, some or all of the fiduciary breaches for which relief is sought occurred in this district, the Company's corporate headquarters is located in this district, and/or some Defendants reside or maintain their primary residence in this district.

7.      This district is an appropriate venue for this action because, on a recent Form 5500 annual filing with the Internal Revenue Service and Department of Labor, the address listed for the sponsor of the Plan is in this district.

## PARTIES

### Plaintiff

8.      Plaintiff Connie Riggs is a "participant," within the meaning of § 3(7) of ERISA, 29 U.S.C. § 1102(7), in the Plan and held Humana shares in her retirement investment portfolio during the Class Period.

### Defendants

9.      Defendant Humana is a Delaware Corporation with its principal place of business located at 500 West Main Street, Louisville, KY 40202.   The Company provides various health

and supplemental benefit plans for employer groups, government benefit programs, and individuals in the United States.

10.     Defendant Michael B. McCallister ("McCallister") served, at all relevant times, as the Company's Chief Executive Officer.

11.     Defendant James H. Bloem ("Bloem") served, at all relevant times, as the Company's Chief Financial Officer.

12.     Defendants McCallister and Bloem are collectively referred to herein as the "Individual Defendants."

13.     Because of the Individual Defendants' positions with the Company, they had access to the adverse undisclosed information about the Company's business, operations, operational trends, financial statements and markets via access to internal corporate documents (including the Company's operating plans, budgets, forecasts and reports of actual operations compared thereto), conversations and connections with other corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof and via reports and other information provided to them in connection therewith.

14.     On information and belief, the Company is the sponsor and administrator of the Plan and further exercised discretionary authority with respect to management and administration of the Plan and/or management and disposition of the Plan's assets, and was therefore a fiduciary of the Plan. The Company had, at all applicable times, effective control over the activities of its directors, officers and employees, including the Individual Defendants, including over their activities related to the Plans.

### **"Doe" Defendants**

15.     Without limitation, unknown "Doe" Defendants 1-20 include other individuals, including members of the Plan fiduciary committees, as well as other Company officers, directors and employees who are or were fiduciaries of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A) during the Class Period.  The identities of the John Doe Defendants are currently unknown to Plaintiff; once their identities are ascertained, Plaintiff will seek leave to join them to the instant action under their true names.

### **THE PLANS**

16.     The Plans are "employee pension benefit plan[s]," as defined by § 3(2)(A) of ERISA, 29 U.S.C. § 1002(2)(A) and, further, is "defined contribution plans" within the meaning of ERISA § 3(34), 29 U.S.C. § 1002(34).  The relief requested in this action is for the benefit of the Plans and their participants and beneficiaries.

### **CLASS ACTION ALLEGATIONS**

17.     Plaintiff brings this action as a class action pursuant to Rules 23(a), (b)(1), and/or (b)(2) of the Federal Rules of Civil Procedure on behalf of herself and the following class of persons similarly situated (the "Class"):

> All persons who were participants in or beneficiaries of the Plans, at any time between September 1, 2007 through the present (the "Class Period") and whose accounts with the Plans included investments in the Company's stock.

18.     The members of the Class are so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiff at this time, and can only be ascertained through appropriate discovery, Plaintiff believes there are several thousand members of the Class who participated in, or were beneficiaries of, the Plans during the Class Period and whose accounts in the Plans included investment in the Company's stock.

19.     Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class.  Among the questions of law and fact common to the Class are:

      (a)     whether Defendants each owed a fiduciary duty to the Plans, Plaintiff and members of the Class;

      (b)     whether Defendants breached their fiduciary duties to the Plans, Plaintiff and members of the Class by failing to act prudently and solely in the interests of the Plans and the Plans' participants and beneficiaries;

      (c)     whether Defendants violated ERISA; and

      (d)     whether the Plans and members of the Class have sustained damages and, if so, what is the proper measure of damages and/or remedy.

20.     Plaintiff's claims are typical of the claims of the members of the Class because Plaintiff, the Plans and the other members of the Class each sustained damages arising out of the Defendants' wrongful conduct in violation of federal law as complained of herein.

21.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class action, complex, and ERISA litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Plans or the Class.

22.     Class action status in this ERISA action is warranted under Rule 23(b)(l)(B) because prosecution of separate actions by the members of the Class would create a risk of adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of the other members not parties to the actions, or substantially impair or impede their ability to protect their interests.

23.     Class action status is also warranted under the other subsections of Rule 23(b) because: (i) prosecution of separate actions by the members of the Class would create a risk of establishing incompatible standards of conduct for Defendants; and (ii) Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to the Class as a whole.

## DEFENDANTS' FIDUCIARY DUTIES TO PLAINTIFF

24.     On information and belief, during the Class Period, each one of the Defendants had discretionary authority with respect to the management of the Plans and/or the management or disposition of the Plans' assets and/or exercised control or authority over Plan assets, and therefore were fiduciaries of the Plan pursuant to § 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A).

25.     Throughout the Class Period, the Company's responsibilities included, along with its officers, directors and executives, oversight of and ultimate decision-making authority respecting the management and administration of the Plans and assets of the Plans, as well as the appointment, removal, and monitoring of other fiduciaries of the Plans that the Company appointed or to whom it assigned fiduciary duty.

26.     During the Class Period, upon information and belief, Defendants made direct and indirect communications with the Plans' participants including statements regarding investments in Company stock, including, but were not limited to, SEC filings, annual reports, press releases, and Plan documents (including Summary Plan Descriptions ("SPDs") and Prospectuses regarding Plan/participant holdings of Company stock), which included and/or reiterated these statements.  Upon information and belief, at all times during the Class Period, Defendants' SEC

7

filings were incorporated into and part of the Plans' SPDs, Prospectuses and/or the Form S-8 registration statements. Defendants also acted as fiduciaries to the extent of this activity.

27.     Further, Defendants, as the Plans' fiduciaries, knew or should have known certain basic facts about the characteristics and behavior of the Plans' participants, well-recognized in the 401(k) literature and the trade press, concerning investment in company stock, including that:

(e)     Employees tend to interpret an investment of employee benefit plan assets in company stock as an endorsement of the company and its stock;

(f)     Out of loyalty, employees tend to invest in, and, where applicable, refrain from divesting, company stock;

(g)     Employees tend to over-extrapolate from recent returns, expecting high returns to continue or increase going forward; and

(h)     Employees tend not to change their investment option allocations in the plan once made;

28.     Even though Defendants knew or should have known these facts, and even though Defendants knew of the high concentration of the Plans' funds in Company stock, they still disseminated inaccurate, incomplete and materially misleading statements Plans-wide regarding the Company's financial and operational health and future prospects, and/or did nothing to correct such statements.

## DEFENDANTS' BREACHES OF FIDUCIARY DUTY

29.     The Company provides various health and supplemental benefit plans for employer groups, government benefit programs, and individuals.

30.     During the Class Period, the Company overstated its earnings estimates and failed to inform the Plans' participants that the Company had mispriced the costs of its stand-alone

Medicare Prescription Drug Plan ("PDP") and that its PDP-related costs had increased significantly.

31.     On September 30, 2007, the Company filed a Form 8-K with the Securities and Exchange Commission ("SEC").  The Form 8-K stated that the Company's stand-alone PDPs were "expected to positively impact fourth quarter 2007 and full-year 2008 results."  It further stated that the Company "also projects EPS [expected earnings per share] for the year ending December 31, 2008 (FY08E) to be in the range of $5.30 to $5.50, an increase of 10 to 16 percent over FY07E EPS, or 16 to 22 percent versus the non-GAAP EPS for FY07E."

32.     On January 9, 2008, the Company filed another Form 8-K with the SEC.  It stated:  "On January 9, 2008, officers of Humana Inc. will be meeting with investors and analysts at an industry conference.  During the meetings, the Company intends to … reaffirm the Company's earnings per share guidance for the full year 2008 of $5.30 to $5.50."  It further stated:  "gross sales for stand-alone Prescription Drug Plans are somewhat ahead of expectations."

33.     On February 4, 2008, the Company issued a press release announcing its financial results for the fourth quarter of 2007 and raising its earnings estimates for 2008.  For the year of 2008, the Company stated that it expected earnings per share ("EPS") in the range of $5.35 to $5.55 per share.  For the first quarter of 2008, the Company stated that it expected EPS in the range of $0.80 to $0.85.  On behalf of the Company, Defendant Bloem publicly attributed the increased EPS to a decrease in low-income senior members.  He further stated that "we do not foresee any significant changes to the components of our cost trends as we move into 2008."

34.     Defendant Bloem reiterated the EPS range of $5.35 to $5.55 per share for the year of 2008 at the UBS Global Healthcare Services Conference in New York on February 12, 2008.

Defendant McCallister likewise reiterated this range on February 28, 2008, at the Merrill Lynch Investor Meeting in Toronto, Canada.

35.     At all relevant times, Defendants knew or should have known that Company stock was an imprudent investment for the Plans and the Plans' participants.  At the time they were making those public statements about the Company, Defendants knew that the Company was unable to properly calculate the prescription drug costs of its newly acquired members, that the Company's costs associated with its PDPs had dramatically increased, and that as a result of the foregoing, Defendants' projections lacked a reasonable basis and were false and misleading.

36.     As a result of Defendants' knowledge of and, at times, implication in creating and maintaining public misconceptions concerning the true financial health of the Company, any generalized warnings of market and diversification risks that Defendants made to the Plans' participants regarding the Plans' investment in the Company's stock did not effectively inform the Plans' participants of the past, immediate, and future dangers of investing in Company stock.

37.     Defendants also failed to conduct an appropriate investigation into whether Company stock was a prudent investment for the Plans and, in connection therewith, failed to provide the Plans' participants with information regarding the Company's deep-rooted problems so that participants could make informed decisions regarding whether to divest their Company stock in the Plans into alternatives provided in the related 401(k) plans.

38.     An adequate investigation by Defendants would have revealed to a reasonable fiduciary that investment by the Plans in Company stock, under these circumstances, was clearly imprudent.  A prudent fiduciary acting under similar circumstances would have acted to protect participants against unnecessary losses, and would have made different investment decisions.

10

39.     Because Defendants knew or should have known that Company stock was not a prudent investment option for the Plans, they had an obligation to protect the Plans and their participants from unreasonable and entirely predictable losses incurred as a result of the Plans' investment in Company stock.

40.     Defendants had available to them several different options for satisfying this duty, including: making appropriate public disclosures as necessary; divesting the Plans of Company stock; consulting independent fiduciaries regarding appropriate measures to take in order to prudently and loyally serve the participants of the Plans; and/or resigning as fiduciaries of the Plans to the extent that as a result of their employment by the Company they could not loyally serve the Plans and their participants in connection with the Plans' acquisition and holding of Company stock.

41.     Despite the availability of these and other options, Defendants failed to take any action to protect participants from losses resulting from the Plans' investment in Company stock. In fact, the Defendants continued to allow heavy investment of the Plans' assets in Company stock even as the Company's problems came to light.

42.     By misrepresenting the Company's business, the defendants presented a misleading picture of the Company's business and prospects.  Thus, instead of truthfully disclosing during the Class Period that the Company's business was not as healthy as represented, Defendants falsely overstated its EPS, and falsely concealed the business problems the Company was experiencing.

43.     These omissions caused and maintained the artificial inflation in the Company's stock price throughout the Class Period.

44.     Defendants' false and misleading statements caused Company stock to trade at artificially inflated levels throughout the Class Period.

45.     On March 12, 2008, the Company issued a press release entitled "Humana Revises Earnings Guidance."  Therein, the Company issued a revised EPS of $0.44 to $0.46 for the first quarter of 2008, instead of its previous EPS of $0.80 to $0.85; and it revised its EPS for the year to be $4.00 to $4.25, instead of its previous EPS of $5.35 to $5.55.  The Company attributed its revised projections to "actuarial assumptions versus experience," "new member experience," and "member mix."  Following this announcement, shares of Company stock dropped by $6.50 per share.

## COUNT I

### Failure to Prudently and Loyally Manage the Plans' Assets
### (Breaches of Fiduciary Duties in Violation of ERISA § 404 and § 405)

46.     Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

47.     At all relevant times, as alleged above, all Defendants were fiduciaries within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

48.     Defendants were responsible for ensuring that investment options made available to participants under the Plans were prudent.  Defendants were responsible for ensuring that assets within the plans were prudently invested.  Defendants were responsible for ensuring that all investments in the Company stock in the Plans were prudent and that such investment was consistent with the purpose of the Plans.  Defendants are liable for losses incurred as a result of such investments being imprudent.

49.     Defendants breached their duties to prudently and loyally manage the Plans' assets.  During the Class Period, Defendants knew or should have known that the Company stock

was not a suitable and appropriate investment for the Plans as described herein.  Investment in

the Company stock during the Class Period did not serve the Plans' purpose of helping

participants save for retirement, and in fact caused significant losses/depreciation to participants'

retirement savings.  During the Class Period, despite their knowledge of the imprudence of the

investment, Defendants failed to take any meaningful steps to protect the Plans' participants

from the inevitable losses that they knew would ensue from investment in Company stock.

Moreover, Defendants had a duty to put in place a financial strategy to address the volatility of

single equity investments.  Defendants failed to implement such a strategy.

  50. Defendants also breached their co-fiduciary obligations by, among their other

failures: knowingly participating in, or knowingly undertaking to conceal, the other Defendants

failure to disclose crucial information regarding the Company's operations, business practices,

and artificial inflation of the price of the Company stock.  Defendants knew or should have

known of such breaches by the Plans' fiduciaries, yet made no effort to remedy the same.

  51. As a direct and proximate result of the breaches of fiduciary duties alleged herein,

the Plan, and indirectly, Plaintiff and the Plans' other participants and Beneficiaries, lost a

significant portion of their retirement investment.

  52. Pursuant to ERISA § 502(a), 29 U.S.C. § 1132(a) and ERISA § 409, 29 U.S.C. §

1109(a), Defendants in this Count are liable to restore the losses to the Plans caused by their

breaches of fiduciary duties.

0030074/001/ 37227v03

## COUNT II

**Failure to Provide Complete and Accurate Information
to the Plans' Participants and Beneficiaries by all Defendants
(Breaches of Fiduciary Duties in Violation of ERISA §§ 404 and 405 of ERISA)**

53.     Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

54.     At all relevant times, Defendants were fiduciaries of the Plans within the meaning of ERISA § 3(21)(A), 29 U.S.C.§ 1002(21)(A). Consequently, they were bound by the duties of loyalty, exclusive purpose and prudence.

55.     At all relevant times, the scope of Defendants' fiduciary responsibilities included making communications and material disclosures related to the Plans.  As part of these obligations, Defendants had a duty to provide the Plans' participants with information they possessed that they knew or should have known would have an impact on the Plans.

56.     The duty of loyalty under ERISA requires fiduciaries to speak truthfully to participants, not to mislead them regarding the plan or plan assets, and to disclose information that participants need in order to exercise their rights and interests under the Plans.  This duty to inform participants includes an obligation to provide participants and beneficiaries of the Plans with complete and accurate information, and to refrain from providing inaccurate or misleading information, or concealing material information, regarding the Plans' investment options such that participants can make informed decisions with regard to the prudence of whether or not to keep or divest, to the extent possible, their Company stock investments in the Plans.  This duty applies to all of the Plans' investment options, including investment in Company stock.

0030074/001/ 37227v03

57.     Defendants knew that investment in Company stock carried with it an inherently high degree of risk.  This inherent risk made the Defendants' duty to provide complete and accurate information particularly important.

58.     Defendants breached their duty to inform participants by issuing false and misleading statements through SEC filings and press releases regarding the value of Company stock and the financial health of the Company, and by failing to provide complete and accurate information regarding the Company's increased costs and inability to calculate costs, their concealment of the same and the consequent artificial inflation of the value of the Company stock and, generally, by conveying inaccurate information regarding the Company's future outlook.  In addition, Defendants failed to disclose any information to the Plans' participants regarding the Company's deceitful business practices and how those practices adversely affected the value of Company stock as a prudent option under the Plans.  These failures were particularly devastating to the Plans and their participants; losses in this investment had an enormous impact on the value of participants' retirement assets, as a significant percentage of the Plans' assets were invested in Company stock.

59.     These actions and failures to act were uniform and caused the Plans, and/or the participants and beneficiaries of the Plans, to continue to make and maintain substantial investments in Company stock in the Plans at a time when these Defendants knew or should have known that the Plans' participants and beneficiaries (and non-defendant fiduciaries) did not have complete and accurate information concerning their investments.

60.     Defendants are also liable as co-fiduciaries because (1) they knowingly participated in and knowingly undertook to conceal the failure of the other fiduciaries to provide complete and accurate information regarding the Company stock, despite knowing of their

breaches; (2) they enabled such conduct as a result of their own failure to satisfy their fiduciary duties; and (3) they had knowledge of or should have known of the other fiduciaries' failures to satisfy their duty to provide only complete and accurate information to participants, yet did not make any effort to remedy the breaches.

61.     Where a breach of fiduciary duty consists of, or includes, misrepresentations and omissions material to a decision by a reasonable participant of the Plans that results in harm to the participant, the participant is presumed as a matter of law to have relied upon such misrepresentations and omissions to his detriment.  Here, the above-described statements, acts and omissions of the Defendants in this Complaint constituted misrepresentations and omissions that were fundamentally deceptive concerning the prudence of investments in the Company stock and were material to any reasonable person's decision about whether or not to maintain any part of their invested assets of the Plans in the Company stock during the Class Period.  Plaintiff and the other Class members are therefore presumed to have relied to their detriment on the misleading statements, acts, and omissions of the Defendants as described herein.

62.     As a direct and legal consequence of these Defendants' breaches of fiduciary duty, the Plans suffered millions of dollars in losses.  If the Defendants had discharged their fiduciary duties to prudently manage and invest the Plans' assets, the losses suffered by the Plans would have been minimized or avoided.  Therefore, as a direct and proximate result of the breaches of fiduciary duties alleged herein, the Plans, and indirectly Plaintiff and the Plans' other participants and beneficiaries, lost a significant portion of their retirement investments.

63.     Pursuant to ERISA § 502(a), 29 U.S.C. § 1132(a) and ERISA § 409, 29 U.S.C. § 1109(a), Defendants in this Count are liable to restore the losses to the Plans caused by their breaches of fiduciary duties alleged in this Count.

## COUNT III

**Breach of Duty to Avoid Conflicts of Interest**
**(Breaches of Fiduciary Duties in Violation of ERISA §§ 404 and 405)**

64.     Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

65.     At all relevant times, as alleged above, Defendants were fiduciaries within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).  Consequently, they were bound by the duties of loyalty, exclusive purpose and prudence.

66.     ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A), imposes on a plan fiduciary a duty of loyalty, that is, a duty to discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and beneficiaries.

67.     Through the conduct alleged herein, Defendants put themselves in the inherently conflicted position of having to choose between their duties to loyally serve the interests of Plans participants and the interests of others, including themselves.  Through the conduct alleged herein, Defendants placed the interest of the Company before the interests of the Plans' participants, in violation of their fiduciary duties under ERISA.

68.     Defendants breached their duty to avoid conflicts of interest and to promptly resolve them by, *inter alia*; failing to timely engage independent fiduciaries who could make independent judgments concerning the Plan's investments in Company's own securities, by failing to notify federal agencies of the facts that made Company stock an imprudent investment for the Plans, by failing to take other steps to ensure that Plan participants' interests were loyally served, and by otherwise placing their own and the Company's interests above the interests of the participants with respect to the Plans' investment in the Company's securities.

0030074/001/ 37227v03

69.     As a direct and legal consequence of Defendants' breaches of fiduciary duty, the Plan suffered millions of dollars in losses.  If Defendants had discharged their fiduciary duties to prudently manage and invest the Plans' assets, the losses suffered by the Plans would have been minimized or avoided.  Therefore, as a direct and proximate result of the breaches of fiduciary duties alleged herein, the Plans, and indirectly Plaintiff and the Plans' other participants and beneficiaries, lost a significant portion of their retirement investments.

70.     Pursuant to ERISA § 502(a), 29 U.S.C. § 1132(a), and ERISA § 409, 29 U.S.C. § 1109(a), Defendants in this Count are liable to restore the losses to the Plans caused by their breaches of fiduciary duties alleged in this Count

## COUNT IV

### Failure to Adequately Monitor Other Fiduciaries and
### Provide Them with Accurate Information
### (Breaches of Fiduciary Duties in Violation of ERISA § 404)

71.     Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

72.     At all relevant times, as alleged above, Defendants were fiduciaries within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

73.     At all relevant times, as alleged above, the scope of the fiduciary responsibility of Defendants included the responsibility to appoint, evaluate, and monitor other fiduciaries.

74.     The duty to monitor entails both giving information to and reviewing the actions of the monitored fiduciaries.  In this case, that means that the monitoring fiduciaries, Humana and the Individual Defendants, had the duty to:

(1)     Ensure that the monitored fiduciaries possess the needed credentials and experience, or use qualified advisors and service providers to fulfill their duties.

They must be knowledgeable about the operations of the Plans, the goals of the

Plan, and the behavior of the Plans' participants;

(2)     Ensure that the monitored fiduciaries are provided with adequate financial

resources to do their job;

(3)     Ensure that the monitored fiduciaries have adequate information to do

their job of overseeing the Plans' investments;

(4)     Ensure that the monitored fiduciaries have ready access to outside,

impartial advisors when needed;

(5)     Ensure that the monitored fiduciaries maintain adequate records of the

information on which they base their decisions and analysis with respect to the

Plans' investment options; and

(6)     Ensure that the monitored fiduciaries report regularly to the Company

and/or the Director Defendants.  The Company and/or Director Defendants must

then review, understand, and approve the conduct of the hands-on fiduciaries.

75.     A monitoring fiduciary must ensure that the monitored fiduciaries are performing

their fiduciary obligations, including those with respect to the investment of a plan's assets, and

must take prompt and effective action to protect a plan and its participants when they arc not.  In

addition, a monitoring fiduciary must provide the monitored fiduciaries with complete and

accurate information in their possession that they know or reasonably should know that the

monitored fiduciaries must have in order to prudently manage a plan and a plan's assets.

76.     Defendants breached their fiduciary monitoring duties by, among other things, (a)

failing to ensure that the monitored fiduciaries had access to knowledge about the Company's

business problems alleged above, which made Company stock an imprudent retirement

19

investment, and (b) failing to ensure that the monitored fiduciaries completely appreciated the huge risk of significant investment of the retirement savings of rank and file employees in an undiversified employer stock fund that was made up primarily of Company stock, an investment that was imprudent and subject to inevitable and significant depreciation, especially where, as here, the stock price was artificially inflated by Defendants' own wrongful conduct.

77.     Defendants knew or should have known that the fiduciaries they were responsible for monitoring were imprudently continuing to invest the assets of the Plans in Company stock when it no longer was prudent to do so.  Despite this knowledge, Defendants failed to take action to protect the Plans, and concomitantly the Plans' participants, from the consequences of these fiduciaries' failures.

78.     In addition, Defendants, in connection with their monitoring and oversight duties, were required to disclose to the monitored fiduciaries accurate information about the financial condition of the Company that they knew or should have known that these Defendants needed to make sufficiently informed decisions.  By remaining silent and continuing to conceal such information from the other fiduciaries, Defendants breached their monitoring duties under the Plans and ERISA.

79.     Defendants are liable as co-fiduciaries because they knowingly participated in the each other's fiduciary breaches as well as those by the monitored fiduciaries, they enabled the breaches by these Defendants, and they failed to make any effort to remedy these breaches, despite having knowledge of them.

80.     As a direct and proximate result of the breaches of fiduciary duties alleged herein, the Plan, and indirectly the Plaintiff and the Plans' other participants and beneficiaries, lost a significant portion of their retirement investments.

0030074/001/ 37227v03

81.     Pursuant to ERISA § 502(a), 29 U.S.C. § 1132(a) and ERISA § 409, 29 U.S.C. § 1109(a), Defendants in this Count are liable to restore the losses to the Plans caused by their breaches of fiduciary duties alleged in this Count.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for:

A.     A Declaration that the Defendants, and each of them, have breached their ERISA fiduciary duties to the participants;

B.     A Declaration that the Defendants, collectively and separately, are not entitled to the protection of ERISA § 404(c)(1)(B), 29 U.S.C. § 1104(c)(1)(B);

C.     An Order compelling the Defendants to make good to the Plans all losses to the Plans resulting from Defendants' breaches of their fiduciary duties, including losses to the Plans resulting from imprudent investment of the Plans' assets, and to restore to the Plans all profits the Defendants made through use of the Plans' assets, and to restore to the Plans all profits which the participants would have made if the Defendants had fulfilled their fiduciary obligations;

D.     An Order enjoining Defendants from further breaching their fiduciary duties under ERISA;

E.     Imposition of a Constructive Trust on any amounts by which any Defendant was unjustly enriched at the expense of the Plans as the result of breaches of fiduciary duty;

F.     Actual damages in the amount of any losses the Plans suffered, to be allocated among the Plans participants' individual accounts in proportion to the accounts' losses;

G.     An Order that Defendants allocate the Plans' recoveries to the accounts of all participants who had any portion of their account balances invested in the common stock of the

Company maintained by the Plans in proportion to the accounts' losses attributable to the decline in the stock price of the Company;

     H.     An Order awarding costs pursuant to 29 U.S.C. § 1132(g);

     I.     An Order awarding attorneys' fees pursuant to 29 U.S.C. § 1132(g) and the common fund doctrine; and

     J.     An Order for equitable restitution and other appropriate equitable monetary relief against the Defendants.

## JURY TRIAL DEMAND

     Plaintiff demands a trial by jury.


DATED: June 9, 2008

     s/David M. Cook_____
     David M. Cook
     Robert E. Rickey
     COOK, PORTUNE & LOGOTHETIS, LPA
     22 W. 9th Street
     Cincinnati, Ohio 45202-2024
     Phone: 513.721.0444
     Fax:   513.721.1178
     e-mail: dcook@dmcllc.com

         and

     LINER YANKELEVITZ SUNSHINE &
     REGENSTREIF LLP

     s/Ronald S. Kravitz
     Ronald S. Kravitz
     199 Fremont Street, 20th Floor
     San Francisco, CA 94105-2255
     Telephone: (415) 489-7700
     Facsimile: (415) 489-7701
     Email: rkravitz@linerlaw.com

     Attorneys for Plaintiff and Proposed Class

0030074/001/ 37227v03